UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ROBERT SETH LABREAU, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No.: 2:25-CV-91-TAV-CRW |
| ROBERT "KEITH" BASS, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a former prisoner who was incarcerated at the Sullivan County Jail, filed this pro se civil rights action under 42 U.S.C. § 1983 [Doc. 1] and motions for leave to proceed *in forma pauperis* [Docs. 4, 9]. For the reasons set forth below, the Court will **GRANT** Plaintiff's latest-filed motion to proceed as a pauper [Doc. 9], **DENY** his first motion [Doc. 4] as moot, **PERMIT** Plaintiff's equal protection claim to proceed, and **DISMISS** Plaintiff's remaining claims.

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff was incarcerated when he first sought leave to proceed *in forma pauperis* [Doc. 4]. Before the Court ruled on that motion, however, Plaintiff was released from custody [Doc. 6]. Thereafter, the Court entered an Order requiring Plaintiff to submit updated information concerning his financial status [Doc. 8]. Plaintiff complied, and a second motion for leave to proceed *in forma pauperis* [Doc. 9] was filed with the Court.

Under 28 U.S.C. § 1915, the Court may generally "authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein,

without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Although the relevant statute specifically references the "assets such *prisoner* possesses," the Sixth Circuit has construed the statute to extend to non-prisoners who apply to proceed *in forma pauperis*. *See Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). When assessing whether to permit an individual to proceed without paying the filing fee, the Court is not concerned with whether the applicant is destitute, but rather, "whether the court costs can be paid without undue hardship." *Foster v. Cuyahoga Dep't of Health & Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). In reaching that determination, the Court considers all the resources potentially available to the applicant, including those of a spouse or other family members. *See Ciavarella v. Comm'r of Soc. Sec.*, No. 5:13-CV-2031, 2013 WL 5354091, at *1 (N.D. Ohio Sept. 24, 2013) (citation omitted).

Plaintiff's latest motion to proceed as a pauper, which was drafted "under penalty of perjury[,]" states that Plaintiff has no monthly income and lists expenses of approximately $1,250 [Doc. 9, pp. 7, 9, 10]. Accordingly, it appears Plaintiff cannot bear the filing fee in this action without undue hardship, and the Court will **GRANT** Plaintiff's second motion for leave to proceed *in forma pauperis* [Doc. 9]. The Court will **DENY** his initial motion [Doc. 4] as moot.

## II.     SCREENING OF COMPLAINT

### A.     Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

**B.      Plaintiff's Allegations**

Plaintiff "practices Islam as a Sunni Muslim" and was a "hall trustee" at the Sullivan County Jail when Ramadan began in 2025 [Doc. 1, p. 4]. From March 7 through April 17, 2025, when Plaintiff was moved into a "pod trust[y] job[,]" he was "belittled, harassed, embarrassed, and treated worse than the other hall trustee workers" and kitchen staff by Kitchen Supervisor Keith[1] Bass [*Id.*].

Typically, "hall trustees" get two dinner trays, with the extra tray serving as a reward for cleaning and "passing trays" [*Id.* at 5]. Each Friday is "Fish Day" at the facility [*Id.*]. Plaintiff, who is allergic to fish, receives "a non-fish replacement" on Fridays [*Id.*]. Keith Bass knew that Plaintiff was observing Ramadan and "was on a no fish diet[,]" but on March 7, 2025, Plaintiff was given a dinner tray without fish or a fish replacement [*Id.*]. Plaintiff asked Officer Bass to give him a replacement, but Officer Bass refused [*Id.*]. Plaintiff asked Officer Bass "to give [him] equal treatment to the other hall trustees[,]" to which Officer Bass replied, "Do you want to be treated 'normal'? Maybe when you[']r[e] off Ramadan" [*Id.* at 5–6].

---

[1] Plaintiff refers to Defendant Bass in the body of his complaint by the name "Keith" [*See, generally*, Doc. 1]. The Court follows suit.

4

On March 14, 2025, Officer Bass gave Plaintiff another dinner tray without a main course, while Plaintiff's co-workers received full trays [*Id.* at 6]. When Plaintiff complained to other officers and showed the other officers his less-full tray, Officer Bass revoked bonus trays for all "hall trustees" as a punishment [*Id.*]. This turned Plaintiff's co-workers against him, and they told Plaintiff it was not fair for them to be punished because "Officer Keith Bass was out for [Plaintiff] for being Muslim [and] on Ramadan" [*Id.* at 6–7]. Officer Bass gave the "trustees" their "extra trays back" on March 20, 2025, when Plaintiff was off work for three days and Officer Bass thought Plaintiff had been fired [*Id.*].

On March 21, 2025, Plaintiff "received a half tray" [*Id.*]. Plaintiff did not complain, but he did consider being taken off Ramadan "due to the embarrassment [of] being treated like less of a person by" Officer Bass [*Id.* at 7].

On March 28, 2025, Officer Bass gave Plaintiff "another half tray" at dinner, while the other "hall trustees" had "all the[i]r food" [*Id.*]. Plaintiff "was the only one targeted" [*Id.*].

On April 5, 2025, Plaintiff "was moved into the kitchen trustee pod" [*Id.* at 8]. The kitchen workers told Plaintiff he should request to be moved back into the hallway pod, because Officer Bass did not like Plaintiff and had been making comments such as, "F**k Labreau [and] this Ramadan bulls**t" [*Id.*]. Upon the advice of other workers, and to avoid confrontation with Officer Bass, Plaintiff requested to move back into the hall "trustee" job [*Id.*]. Before he left the kitchen, Plaintiff asked two inmate workers why Officer Bass would not let him get a tray substitute [*Id.* at 8–9]. Those workers stated they

had asked Officer Bass that question, and that he responded, "I don't give a f**k[.] I don't want to hear it" [*Id.* at 9]. The workers stated Officer Bass "started being hard on them for asking" [*Id.*].

On April 16, 2025, Plaintiff was eating dinner in the laundry room with two other "hall trustees" [*Id.*]. A "kitchen trustee" had given them two extra trays [*Id.*]. Officer Bass entered the laundry room, saw the extra two trays, and accused Plaintiff of stealing them [*Id.*]. Plaintiff told Officer Bass that the "kitchen trustees" had given them the trays and to "rewind the camera footage if he needed further proof" [*Id.*]. Officer Bass left the laundry room and returned with two other officers, one of whom was Officer Davis [*Id.*]. Officer Davis asked Plaintiff why he stole the trays, and Plaintiff informed him that no one stole trays, noting that there were only two extra trays [*Id.* at 9–10]. Keith Brooks wanted Plaintiff to identify who gave him the extra trays, but Plaintiff refused to say [*Id.* at 10]. Officer Davis asked why Officer Bass was so hard on Plaintiff, and the other "trustees" told Officer Davis that Officer Bass "ha[d] been singl[]ing [Plaintiff] out [and] being confrontational since [R]amadan" [*Id.*]. Officer Davis told the "trustees" that Officer Bass had lied to him about Plaintiff stealing the trays [*Id.*].

The next day, two kitchen workers told Plaintiff that Officer Bass had stated that Plaintiff identified "trustee" Chad Perry as the person who gave him an extra tray [*Id.*]. Officer Bass did so "to start a rumor of [Plaintiff] being a snitch [and] attempting to get [him] hurt" [*Id.*]. Plaintiff asked Officer Bass if he had "lied on" Plaintiff, but Officer Bass denied doing so [*Id.*]. Plaintiff asked Officer Bass to "sort it out to clear the confusion[,]" but Officer Bass started cursing Plaintiff, stated he would take Plaintiff's "trustee"

6

privileges, told Plaintiff he "deserved to be locked up[,]" stated "he would get [Plaintiff] out [sic] the hallway[,]" and started belittling Plaintiff in front of other "trustees" and officers [*Id.* at 10–11]. Plaintiff told Officer Bass he would not argue with him and walked away [*Id.* at 11]. Plaintiff asked Officer A. Rhymes for help, and Officer Rhymes (1) stated there was no reason for Officer Bass to treat Plaintiff poorly, (2) stated that she had witnessed Officer Bass "treating [Plaintiff] wrong ever since Ramadan started[,]" (3) advised Plaintiff to write a grievance, and (4) stated she would write a report on the incident [*Id.* at 11]. Officer Bass subsequently removed Plaintiff from the "hall trustee" job [*Id.*].

On April 22, 2025, Plaintiff asked Officer Bass his first and last name so that Plaintiff could properly name him on his § 1983 form, to which Officer Bass replied, "None of your business[,] Boy" [*Id.*]. This "translate[s] to being someone[']s b***h while incarcerated" [*Id.*]. Officer Adams made a report about the incident, and Plaintiff was written up "for responding" [*Id.*].

Because of Officer Bass' conduct, Plaintiff states he has suffered discrimination against his religion in violation of his rights under Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment [*Id.*]. Plaintiff asks the Court to award him $2 million in punitive damages against Officer Bass [*Id.* at 13].

C.  Analysis

1.  Free Exercise Claim

"[T]he Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021). To sustain a free exercise claim, a prisoner must allege facts that permit the plausible inference that his sincerely held religious beliefs were substantially burdened by defendants. *See, e.g., Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019); *see also Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). And "the Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A burden is substantial where it (1) forces an individual to choose between following the tenets of his religion and foregoing governmental benefits or (2) places "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Id*.

Plaintiff has not advanced any facts that permit the plausible inference that Officer Bass's alleged conduct substantially burdened Plaintiff's observation of his faith. Plaintiff complains that he was not given a main-course fish substitute for four Fridays during Ramadan. It is unclear whether the main course was missing from his regular tray, his "bonus" tray, or both. Regardless, Plaintiff does not allege that his practice of Islam required him to eat (or refrain from eating) any particular food on Fridays during Ramadan, nor does he allege any facts suggesting that the absence of a main course on his dinner tray

threatened to violate his religious beliefs or pressured him to modify his conduct and violate his religious beliefs.

Moreover, Plaintiff cannot sustain a First Amendment claim against Officer Bass based on his allegedly harassing, vulgar, and/or threatening comments, as verbal harassment and threats are not civil rights violations. *See Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987)); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) ("An inmate has no right to be free from verbal abuse, and minor threats do not rise to the level of a constitutional violation." (internal citations omitted)); *Welch v. Chapman*, No. 07-CV-12334, 2008 WL 544618, at *5 (E.D. Mich. 2008) (adopting magistrate judge's report concluding that assistant deputy warden's alleged remark that he hates Farrakhan and his supporters did not support a free-standing constitutional claim); *Copenhaver v. James*, No. 06–11111, 2008 WL 162547, at *4 (E.D. Mich. Jan.17, 2008) ("Mere verbal harassment does not embody the type of coercive pressure which amounts to a substantial burden on religious exercise.").

Accordingly, Plaintiff has failed to allege sufficient facts to permit the plausible inference that Officer Bass' conduct violated his free exercise rights, and this claim will be **DISMISSED**.

### 2. Equal Protection

Plaintiff also maintains that Officer Bass' alleged conduct violates Plaintiff's right to equal protection of the laws. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV, § 1. "To state an equal protection

9

claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)).  Plaintiff must also allege facts sufficient to permit the plausible inference "that the disparate treatment in question is the result of intentional and purposeful discrimination." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Here, Plaintiff complains that he was treated disparately than the other two "hall trustees," because they received full trays on four Fridays during Ramadan, while Plaintiff did not receive a main course on those days [Doc. 1, p. 5].  But Plaintiff is allergic to fish, and Fridays are "Fish Day" at the facility [*Id.*].  Plaintiff does not allege that the other two "hall trustees" received a non-fish main course on those days, nor has he identified any other individuals who suffer fish allergies but nonetheless received a main-course replacement on Fridays.  Therefore, he has not plausibly alleged that he was treated disparately compared to similarly situated persons.

The Court notes, however, that religious groups are a suspect class. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Congregational Rabbinical Coll. Of Tarikov, Inc.*, 915 F. Supp. 2d 574, 615 (S.D.N.Y. Jan. 4, 2013).  And direct evidence of discrimination against a protected class is sufficient to state a plausible equal protection claim.  *See Lautermilch v. Findlay City Schools*, 314 F.3d 271, 275 (6th Cir. 2003).  Here,

10

Case 2:25-cv-00091-TAV-CRW   Document 16   Filed 10/31/25   Page 10 of 13
PageID #: 77

Plaintiff alleges that Officer Bass stated that he would consider treating Plaintiff equally when he was "off Ramadan" [Doc. 1, pp. 5–6]. At this stage of the litigation, the Court finds Officer Bass' alleged invocation of Plaintiff's observance of Ramadan as his motivation to deny Plaintiff a non-fish meal replacement is plausible evidence of a discriminatory intent by Officer Bass, and the Court will permit this discrete claim to **PROCEED**.

### 3. Deliberate Indifference

Although Plaintiff does not expressly raise a claim related to his allegations that Officer Bass "start[ed] a rumor of [Plaintiff] being a snitch [and] attempting to get [him] hurt[,]" the Court liberally construes Plaintiff's complaint to consider whether these allegations form a claim that Officer Bass was deliberately indifferent to a risk of harm to Plaintiff [Doc. 1, p. 10]. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726–28 (6th Cir. 2022) (providing deliberate indifference to an inmate's health or safety violates the Eighth Amendment while deliberate indifference to a pretrial detainee's health or safety violates the Fourteenth Amendment). Assuming, to Plaintiff's benefit,[2] that he was a pretrial detainee at the time of this alleged event, Plaintiff establishes deliberate indifference by plausibly alleging that Officer Bass "act[ed] intentionally in a manner that put[] the [P]laintiff at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause[d] the [P]laintiff's injuries." *Id.* at 729.

---

[2] The Eighth Amendment is "more demanding" than the Fourteenth Amendment. *Morgan ex. rel Morgan v. Wayne Cnty.*, 33 F.4th 320, 326 (6th Cir. 2022).

11

Case 2:25-cv-00091-TAV-CRW   Document 16   Filed 10/31/25   Page 11 of 13
PageID #: 78

While being labeled a snitch in prison could place a prisoner in danger, Plaintiff does not allege that he was actually harmed, or that he is at a threat of harm, due to Officer Bass' alleged conduct. Therefore, these allegations fail to state a claim that Officer Bass was deliberately indifferent to a risk of harm to Plaintiff, and any such implied claim will be **DISMISSED**. *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (noting plaintiff has minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety"); *Catanzaro v. Michigan Dep't of Corr.*, No. 08-11173, 2009 WL 4250027, *11–12 (E.D. Mich. Nov. 19, 2009) (holding deliberate indifference claim "must be grounded in an actual physical injury").

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's latest-filed motion for leave to proceed *in forma pauperis* [Doc. 9] is **GRANTED**, and his initial motion [Doc. 4] is **DENIED** as moot;

2. Plaintiff has set forth a plausible claim that Officer Bass violated his equal protection rights, and this claim will **PROCEED**;

3. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Robert "Keith" Bass;

4. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

5. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

6. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

7. Defendant shall answer or otherwise respond to the complaint within 21 days from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default;

8. All remaining claims are **DISMISSED**; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within 14 days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

                                  s/ Thomas A. Varlan
                                  UNITED STATES DISTRICT JUDGE